```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

JUNE M. JONES,                      )
                                    )
            Plaintiff,              )
                                    )
v.                                  )    Case No. CIV-15-062-JHP-KEW
                                    )
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security Administration,            )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

Plaintiff June M. Jones (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on January 6, 1962 and was 52 years old at the time of the ALJ's latest decision. Claimant obtained her GED and an associate's degree. Claimant has worked in the past as an office assistant, hostess, assembly line worker, and health aide. The ALJ, however, determined Claimant had no past relevant work. Claimant alleges an inability to work beginning November 21, 2008

due to limitations resulting from pain in the leg, neck, arm, and back post automobile accident.

## Procedural History

On March 5, 2009, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") entered an unfavorable decision on January 14, 2011. After an appeal to this Court, the ALJ's decision was reversed and the case was remanded by Order entered September 23, 2013.

On remand, a second administrative hearing was conducted by ALJ Robert McPhail by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in San Antonio, Texas. On October 24, 2014, the ALJ issued a second unfavorable decision. Claimant did not file exceptions with the Appeals Council. As a result, he decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with

4

limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to identify all of Claimant's severe impairments at step two; (2) reaching an improper RFC determination; and (3) making inadequate findings at step five of the sequential evaluation.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spines, degenerative joint disease of the left shoulder, and obesity. (Tr. 383). The ALJ concluded that Claimant retained the RFC to perform light work except that Claimant was found to be further limited to occasional overhead reaching with the left upper extremity. (Tr. 386).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform her the representative jobs of cashier II, small products assembler, and motel housekeeper. (Tr. 392). As a result, the ALJ found Claimant had not been disabled from March 5, 2009. (Tr. 393).

Claimant first contends the ALJ should have included mental impairments as severe impairments at step two. Where an ALJ finds at least one "severe" impairment, a failure to designate another

5

impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

The evidence indicates the ALJ considered Claimant's mental impairment claims but found them to be less than severe impairments. (Tr. 383-84). The omission of these conditions at step two is not reversible error.

### RFC Determination

Claimant challenges the ALJ's RFC assessment. Under this general umbrella, Claimant asserts numerous sub-issues. She contends the ALJ failed to properly weigh the opinions of the mental health professionals. Dr. Robert L. Spray performed a psychological evaluation of Claimant on March 30, 2011. He diagnosed Claimant

with mood disorder, NOS, prescription medication dependence, pain disorder, and personality disorder, NOS with histrionic and avoidant features. (Tr. 373). Dr. Spray also completed a mental RFC assessment form. He found Claimant was extremely limited in the area of maintaining regular attendance and demonstrating reliability. He further found severe restrictions in the functional areas of relating to co-workers, interacting with supervisors, maintaining attention for extended periods of time, maintaining concentration for extended periods of time, performing activities within a schedule, being punctual within customary tolerances, working in coordination or proximity to others without being distracted by them, completing a normal workday or workweek, performing at a constant pace, performing without an unreasonable number or length of rest periods, avoiding undue constriction of interests, dealing with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 374-76).

Dr. Spray also found Claimant to be markedly limited in an additional six functional areas. He further found moderate limitations in four more areas. Id.

The ALJ gave Dr. Spray's opinion "little weight" because (1)

7

only the consultative mental reports contain findings of memory deficits and depressed mood; (2) Claimant's primary care treatment records do not show abnormal findings on serial mental status examinations, indicating good control over any condition she might have; (3) grossly intact daily activities suggest less limitation and higher function than indicated by Dr. Spray; and (4) Dr. Spray noted Claimant's drug and alcohol abuse was a probable major contributing factor then Claimant's other diagnosed impairments. (Tr. 390).

Dr. Spray completed another statement dated August 5, 2014. He determined Claimant was markedly limited in the functional area of the ability to make judgments on complex work-related decisions. He also found Claimant was moderately restricted in the areas of carrying out complex instructions, interacting appropriately with the public, supervisors, and co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 604-06).

The ALJ gave "little weight" to this opinion because it was inconsistent with the treating physician's normal serial mental status examinations. He found Claimant's daily activities indicate grossly intact attention, concentration, and memory. (Tr. 391).

Dr. Theresa Horton performed a mental status examination on

Claimant on December 8, 2009. She diagnosed Claimant with mood disorder, NOS with depressed and anxious features, prescription medication dependence, and chronic pain. She concluded Claimant appeared capable of understanding, remembering, and managing simple instructions and tasks and, at times, more complex tasks. However, Claimant also exhibited some mild to moderate memory and recall problems. Dr. Horton found Claimant appeared socially and emotionally capable of adjusting into slow paced occupational and social settings. She had significant complaints of chronic pain. (Tr. 325).

The ALJ again gave "little weight" to Dr. Horton's opinion, stating it was contrary to the clinical findings elsewhere in the record of normal mental status examinations. He also found the findings were inconsistent with Claimant's daily activities, which he stated indicate no lasting limitation from any mental impairment or medication side effect, and which was not substantiated elsewhere by the record. (Tr. 389).

Claimant's primary treating physician is Dr. Dennis J. Carter. He provided pain medication to Claimant. Dr. Carter repeatedly reported Claimant was "negative for anxiety, depression, and sleep disturbances." (Tr. 248, 251). He also stated Claimant was "alert and oriented x 3; appropriate affect and demeanor; recent and remote

9

memory are intact." (Tr. 253). The ALJ relied to a significant degree upon these findings in Dr. Carter's report to discount the findings of Drs. Spray and Horton. (Tr. 390-91).

Yet, the ALJ discounted Dr. Carter's opinions because he "apparently relied quite heavily on the claimant's subjective reports of pain symptoms as evidenced by this remarks on the questionnaire." The ALJ questioned the reliability of Claimant's statements due to the course of treatment taken by Dr. Carter. (Tr. 389). As a result of the ALJ's findings, Dr. Carter's opinions were deemed to be not entitled to controlling weight and were "given no significant weight." (Tr. 389).

The ALJ's analysis of these opinions is internally and irreconcilably flawed. The ALJ discounts the mental health professionals' opinions based in large measure upon Dr. Carter's brief notations in the treatment record then finds Dr. Carter's opinions are not entitled to significant weight. The ALJ must evaluate every medical opinion in the record. <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must also explain in the decision the weight given to the medical opinions. Soc. Sec. R. 96-6p, 1996 WL 374180. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." <u>Haga v.</u>

10

Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). This selective adoption and rejection of various parts of Dr. Carter's findings is not permitted. Moreover, the ALJ essentially rejected all expert findings on Claimant's mental limitations leaving very little in the way of medical evidence upon which to rely. As a result, the ALJ's basis for rejecting Dr. Spray's and Dr. Horton's opinions on Claimant's functional limitations shall be re-evaluated on remand.

Additionally, the ALJ's consideration of the weight due Dr. Carter's findings is suspect. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

11

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's rejection of giving controlling weight Dr. Carter's opinion is largely based upon his belief without real support in the

record that the findings were founded upon Claimant's subjective complaints. Dr. Carter's clinical findings belie this speculation. On remand, the ALJ shall re-evaluate Dr. Carter's findings and provide the required analysis under Watkins.

A medical source statement regarding Claimant's physical limitations was also provided by Dr. Harold Z. DeLaughter on July 26, 2014. Among Dr. DeLaughter's findings was a limitation upon Claimant to only occasionally reach, handle, finger, feel, push, and pull with her left upper extremity. (Tr. 592). This limitation was not recognized or discussed by the ALJ in his decision. The restriction to only occasional overhead reaching with the left upper extremity does not accommodate this limitation. (Tr. 386). On remand, the ALJ shall consider Dr. DeLaughter's additional restriction.

Claimant also challenges the ALJ's assessment of her credibility. The ALJ speculates considerably in his findings on credibility. Namely, he found that Claimant would have reported problems with medications and he would have changed them and she is not motivated to work. These findings find little support in the medical record. On remand, the ALJ shall reconsider his credibility assessment under the rubric of Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).

13

### Step Five Analysis

Claimant contends the ALJ's hypothetical questioning of the vocational expert did not accurately reflect Claimant's RFC because not all of the opinion evidence was considered. Since this Court has directed that the opinion evidence from several sources be re-evaluated on remand, the ALJ shall also reassess his RFC findings and the resulting questioning posed to the vocational expert.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the case REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE